Sydney F. Foster, J.
This is an action for a declaratory judgment. Plaintiffs are six licensed physicians who are specialists in pathology, and have been, with one possible exception, and presently are, directors of clinical laboratories in the State of New York approved by the Commissioner of Health. Another plaintiff is an unincorporated association known as COMPRAC, which is composed of the individual plaintiffs and others possessing the same qualifications. The action is brought for a judgment declaring certain provisions of chapter 217 of the Laws of 1964 (commonly known as the Pomeroy-Metcalf Act) unconstitutional and invalid as to the plaintiffs and others similarly situated.
Plaintiffs’ specific challenge is directed to subdivision 1 of section 572 and section 579 of title V of article 5 of the Public Health Law, which title was added by chapter 217 of the Laws of 1964.
Subdivision 1 of section 572 provides that, on and after July 1,1965, no person shall act as a laboratory director of a laboratory outside the City of New York unless a certificate of qualification has been issued to him under section 573 by the Department of Health. Section 579 excepts from the provisions of title V laboratories operated by the State or the Federal Government, or by a licensed physician who performs laboratory tests or procedures, personally or through his employees, solely as an adjunct to the treatment of his own patients. Laboratories are defined in the act and include clinical laboratories and blood banks. A director is one who is responsible for the administration of the technical and scientific operation of a clinical laboratory or blood bank, including supervision of procedures and reporting of finding of tests.
Plaintiffs contend that the requirement for possession of a certificate of qualification issued by the Department of Health in addition to the license to practice medicine issued by the Department of Education denies them equal protection of the law in violation of the Federal and State Constitutions. (U. S. *348 Const., 14th Amdt.; N. Y. Const., art. I, § 11.) This contention proceeds upon the theory that the challenged subdivisions of the statute require dual licensure of those licensed to practice medicine who engage in the specialty of pathology, while those who practice medicine in other fields need only to possess a single license issued by the Department of Education.
Plaintiffs also contend that section 579 of the act is discriminatory by excepting from the provisions of title V a licensed physician who is a director of a State or Federal laboratory, and a physician who performs laboratory tests solely as an adjunct to the treatment of his own patients. As an alternative plaintiffs assert that they fall within the exception of a physician who performs tests for the treatment of his own patients on the basis that they become associates of physicians who refer pathological matters to them.
Pending the determination of the action, plaintiffs seek a temporary injunction restraining the defendant Commissioner of Health from enforcing against them the challenged provisions of the act. The defendant cross-moves for a dismissal of the complaint, or, in the alternative, for judgment on the pleadings.
Some background as to the passage of chapter 217 of the Laws of 1964 seems appropriate. Prior to the enactment of this statute, the power of the State Commissioner of Health concerning the operation and performance of clinical laboratories was limited to those who voluntarily sought his approval under sections 501 and 502 of the Public Health Law. Before approval was issued to a laboratory under section 502, the director had to possess the educational and technical qualifications prescribed by the Public Health Council pursuant to section 225 of the Public Health Law.
Then came a message from the Governor to the 1964 Legislature in which he stated that clinical laboratories and their personnel were not subject to adequate supervision; that there had been reports from the State Health Department of shocking instances of incompetence on the part of some clinical laboratories; and he recommended legislation to provide new public health protection by establishing a system for the supervision and regulation of clinical laboratories and blood banks. (McKinney’s 1964 Session Laws of New York, pp. 1938-1939.)
The legislation in question was then enacted, which added new title V, sections 570 through 581 inclusive, to article 5 of the Public Health Law. In passing this act the Legislature said: “It is the purpose of this title to promote the public health, safety and welfare by requiring the licensure of clinical laboratories and blood banks, by establishing minimum qualifications *349 for laboratory directors, and by requiring that the performance of all procedures employed by clinical laboratories and blood banks shall meet minimum standards accepted and approved by the department.” (Public Health Law, § 570.) The Governor approved the legislation in a message which again emphasized the importance of supervision over clinical laboratories and blood banks as a public health measure. (McKinney’s 1964 Session Laws of New York, pp. 1954-1955.)
In view of the foregoing there can be no doubt that the act in question is reasonably related to the public health and welfare. As such it clearly comes within the police power of the State. And it follows of course that a strong presumption of constitutionality attaches to it. (See, e.g., I. L. F. Y. Co. v. Temporary State Housing Rent Comm., 10 N Y 2d 263, 269; Wasmuth v. Allen, 14 N Y 2d 391, 397-398, app. dsmd. 379 U. S. 11.)
Plaintiffs’ chief contention, as heretofore noted, is that they are discriminated against and thus denied equal protection of the laws. Equal protection of the laws simply means that all persons similarly situated should be treated alike. But the Legislature may classify persons and objects for the purpose of legislation provided that all members of the same class are treated alike. (See, e.g., Tigner v. Texas, 310 U. S. 141, 147; People v. Klinck Packing Co., 214 N. Y. 121, 129; Sweeney v. Cannon, 23 A D 2d 1, 6, and cases therein collated.) The test is whether the classification made has a reasonable basis, or to put it another way, whether it is so void of rationality as to be the expression of a whim rather than an exercise of judgment (Watson v. Maryland, 218 U. S. 173; Borden’s Co. v. Ten Eyck, 297 U. S. 251, 263).
Here it seems clear that the distinction between physicians who operate laboratories for the diagnostic benefit of other physicians instead of their OAvn patients, and physicians who perform laboratory tests solely as an adjunct to the treatment of their own patients, is a classification which has a reasonable and rational basis and hence is within the power of the Legislature to make. It may be added that such a classification is not obnoxious to the equal protection of the laws since it is not clearly and actually arbitrary (Bachtel v. Wilson, 204 U. S. 36, 41). The Legislature could reasonably conclude that the qualifications Avhich one must possess to practice medicine, including the specialty of pathology (see Education Law, § 6501, subds. 4, 5; § 6502), are somewhat different than those necessary to insure the proper direction of a clinical laboratory (see Public Health Law, § 571, subds. 1, 5; § 573). It is not for the courts to deal with matters of degree under such circumstances, but *350 only to determine if all members of the same class are treated alike. It may be noted that the courts have generally held to the view that the validity of a classification does not depend upon scientific or marked differences in things or persons but rather whether the classification is practical (see, e.g., New York ex rel. Bryant v. Zimmerman, 278 U. S. 63).
The Legislature could reasonably conclude that a director of a clinical laboratory, although he is a licensed physician, a pathologist and the director of a municipally-operated or hospital laboratory, should be required to procure a separate certificate of qualification as a prerequisite to administering such a facility. Furthermore, the act and the complaint herein clearly recognize the distinction between the performance of tests in the treatment of a practitioner’s own patients and the rendering of services to other practitioners in obtaining and providing information for the diagnosis, prevention, or treatment of disease or the assessment of a medical condition. It is the operation of the facility for these laboratory services which the Legislature found to require “ affirmative action to insure that the performance [of such services] * * * meet high standards of public health care ” (Public Health Law, § 570). There is no impingement on the privileges of the individual plaintiffs under the licenses granted to them by the Education Department to act as physicians and pathologists in the private practice of medicine. And exempting Federal and State laboratories from the provisions of the statute may also be considered to be a reasonable classification since the Commissioner of Health has no jurisdiction over facilities operated by the Federal authorities; and laboratories operated by the State are already controlled by the department having jurisdiction and responsibility for their operation. (See, also, Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert. den. 360 U. S. 902.)
In my opinion, therefore, the plaintiffs are neither being arbitrarily discriminated against by the proposed licensure nor do they come within the exemptions to the statute. There being no substantial questions of fact requiring a trial, the motion for a temporary injunction is denied, and judgment may be entered on the pleadings in favor of the defendant, without costs. A stay of 10 days after entry and service of the judgment herein is also granted herewith in order to allow the plaintiffs, if so advised, to seek a review by an appellate court and apply for a stay pending such review.